**John H. GOODING, Appellant,**

**v.**

**UNITED STATES, Appellee.**

No. 84–753.

District of Columbia Court of Appeals.

Submitted Nov. 12, 1985.
Decided Aug. 10, 1987.*

---

* Today the division opinion issued August 20, 1986 (reported as *Gooding v. United States,* 513 A.2d 1320 (D.C.1986) and vacated by en banc order of March 18, 1987) is reissued in amended form by the division. The en banc order of March 18, 1987 is vacated by today's en banc order.

J. Herbie DiFonzo, Washington, D.C., appointed by the court, was on the brief for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, Darryl Jackson, L. Jackson Thomas, and Debra N. Diener, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before PRYOR, Chief Judge, and NEBEKER, MACK, NEWMAN, FERREN, BELSON, TERRY, ROGERS and STEADMAN, Associate Judges.

## ORDER

PER CURIAM.

By en banc order filed March 18, 1987, 522 A.2d 887 (D.C.1987), we granted the petition of the United States to rehear this case en banc; we vacated the opinion of the division reported as *Gooding v. United States*, 513 A.2d 1320 (D.C.1986). In its petition, the United States stated:

> While we believe, for the reasons stated by Judge Ferren in dissent, *id.* at 1335–44, that the panel also erred in concluding that the trial court abused its discretion in denying withdrawal of the guilty plea under the "fair and just" standard, we would not seek *en banc* consideration of this case if the panel had premised its

holding solely on that basis. Indeed, we would be satisfied if the panel, on rehearing, were to delete the Rule 11 basis for its holding. However, because of the threatened impact of this "independent ground" of the panel's ruling on scores of convictions based on guilty pleas, long thought to have been final, we believe this case raises "a question of exceptional importance" warranting *en banc* consideration under D.C.App.R. 40(c)(2).

Upon further consideration, the division has decided to accede to the suggestion of the United States that its opinion be amended and, as amended, reissued, to reflect that its holding is not premised on the ground that appellant's plea of guilty was involuntarily entered under Rule 11. The division today has reissued its opinion as thus amended. Accordingly, the en banc order of March 18, 1987, is vacated.

Before MACK, FERREN and ROGERS, Associate Judges.

MACK, Associate Judge:

We are asked to review the denial, after a hearing, of appellant John H. Gooding's Rule 32(e) motion to withdraw his plea of guilty to kidnapping. In the trial court, appellant argued that his plea was involuntarily entered and that it was fair and just that it be withdrawn. On the record before us, we conclude that withdrawal of the plea should have been permitted as fair and just under the circumstances. We, therefore, reverse and remand so that appellant can have the opportunity to put an asserted coercion defense before a jury.

I

Briefly, the facts surfacing from the government's cursory proffer of evidence at the time of plea show that on April 5, 1982, Lawrence McIntyre was abducted at gunpoint from a street in the District of Columbia. He was taken to an address in Northwest Washington where he was handcuffed and held against his will. McIntyre was subsequently moved to Baltimore, Maryland, and Springfield, Virginia. During his period of incarceration, which lasted until the following day, McIntyre was assaulted with a gun.

According to his testimony at the plea withdrawal hearing, appellant's involvement in this crime began when, for an unrelated purpose, he called at the apartment of his codefendant, Kenneth Bass.[1] After discovering that McIntyre was being held on the premises against his will, appellant nevertheless stayed there in a posture that facilitated the kidnapping. In contrast to Bass, appellant does not appear to have employed either guns or handcuffs. He acted with consideration towards the victim.

The kidnapping of McIntyre was among a series of connected offenses involving two other victims. Bass was the acknowledged principal in all of these crimes.[2] A third participant has seemingly never been apprehended. Appellant had become acquainted with Bass several years earlier when they served a prison sentence in Butner, North Carolina. Both men, at that time, were members of a religious group known as the Moorish Science Temple of America, to which appellant was introduced by other prisoners.

On November 30, 1983, appellant pled guilty to aiding and abetting Bass in the kidnapping of McIntyre.[3] *See* D.C.Code § 22-2101 (1981). Prior to sentencing, within a few days of its entry, appellant sought to withdraw his guilty plea. New counsel was appointed and on January 30, 1984, the Rule 32(e) withdrawal motion was filed in the trial court. On April 23, 1984, appellant presented testimony that his guilty plea had not been voluntarily en-

---

1. Appellant testified that he visited Bass in the District of Columbia in order to obtain a promised $800 loan to help him make mortgage payments on the North Carolina house in which he lived with his wife and children. The record does not disclose whether the loan was ever received. At any rate, unable to make the payments, appellant later lost the residence.

2. Bass was convicted after a jury trial, before appellant's guilty plea was entered, and sentenced to eighty-seven years to life imprisonment. We affirmed his convictions in an unpublished opinion. *Bass v. United States*, No. 83-837 (D.C. June 29, 1984).

3. The nine remaining counts of the indictment were dismissed under the terms of a plea bargain.

tered and that his participation in the McIntyre kidnapping had been coerced by his admittedly violent codefendant. On May 18, 1984, the trial court denied the withdrawal motion and proceeded to sentence appellant to twelve to thirty-six years in prison, all but five years to be suspended, with a five year probation period to follow his release.

## II

The backdrop against which any discussion concerning the withdrawal of

guilty pleas must be set is the dominance of such dispositions in our criminal justice system. In 1985, guilty pleas accounted for 87.1% of all adult felony convictions and 91.4% of all adult misdemeanor convictions in the Superior Court. THE DIST. OF COLUMBIA GOV'T, INDICES—A STATISTICAL INDEX TO DISTRICT OF COLUMBIA SERVICES 224 (1986). By pleading guilty, an accused surrenders a whole panoply of constitutional rights.[4] Because the consequences are so grave, Rule 11 lays down stringent procedural requirements regulating the entry of guilty

4. The Supreme Court has determined that a valid guilty plea operates as a waiver of several constitutional rights. These include the Fifth Amendment right against compulsory self-incrimination, the Sixth Amendment rights to a jury trial and to confront the opposing witnesses, *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969), and the Fourteenth Amendment right against racially discriminatory grand jury selection, *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973). In the *"Brady* Trilogy" the Supreme Court held that specific Fifth Amendment claims against self-incrimination were waived by valid guilty pleas. *Parker v. North Carolina,* 397 U.S. 790, 796–98, 90 S.Ct. 1458, 1462–63, 25 L.Ed.2d 785 (1970) (claim that confession was inadmissible); *McMann v. Richardson,* 397 U.S. 759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970) (same); *Brady v. United States,* 397 U.S. 742, 748, 758, 90 S.Ct. 1463, 1468–69, 1474, 25 L.Ed.2d 747 (1970) (claim that state death penalty statute unconstitutionally coerced guilty pleas in order for defendants to obtain lesser sentences).

Various federal courts of appeals have decided that other constitutional rights are also lost by entry of a valid guilty plea. By reference to these decisions, we do not suggest that we would necessarily approve their holdings if similar issues were presented in this jurisdiction. Such cases hold that a defendant who has pled guilty cannot obtain appellate review of "nonjurisdictional" challenges to the conviction. *See, e.g., Slayton v. Willingham,* 726 F.2d 631, 634 (10th Cir.1984) (per curiam); *Rogers v. Maggio,* 714 F.2d 35, 38 n. 5 (5th Cir.1983). Particular examples are holdings that the accused cannot assert the Fourth Amendment right against illegal searches and seizures, *e.g., United States v. Johnson,* 634 F.2d 385, 386 (8th Cir.1980) (per curiam); *Larios-Mendez v. INS,* 597 F.2d 144, 145–46 (9th Cir.1979) (per curiam); the Fifth Amendment right against coerced confessions, *e.g., United States v. Magnuson,* 680 F.2d 56, 58 (8th Cir.1982) (per curiam); *Franklin v. United States,* 589 F.2d 192, 194–95 (5th Cir.) (per curiam), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2177,

60 L.Ed.2d 1055 (1979); and the Sixth Amendment right to speedy trial, *e.g., Tiemens v. United States,* 724 F.2d 928, 929 (11th Cir.) (per curiam), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984); *United States v. Yunis,* 723 F.2d 795, 796 (11th Cir.1984). An assertion of a due process violation by reason of excessive bail was also waived by a valid guilty plea. *Lambert v. United States,* 600 F.2d 476, 477–78 (5th Cir.1979).

Apart from the loss of constitutional rights, some federal appellate courts have also held that other, non-constitutional rights are lost by entry of a valid guilty plea. Again, our advertence to these cases does not necessarily denote approval. Examples are decisions that an accused cannot obtain review of various prosecutorial defects, *e.g., United States v. Fletcher,* 731 F.2d 581, 582–83 (8th Cir.) (per curiam), *cert. denied,* 469 U.S. 845, 105 S.Ct. 155, 83 L.Ed.2d 92 (1984); *United States v. Boniface,* 631 F.2d 1228, 1229 (5th Cir.1980) (per curiam); or statutory violations occurring before entry of the guilty plea, *e.g., United States v. Hobson,* 686 F.2d 628, 629 (8th Cir.1982) (per curiam).

Entry of a valid guilty plea, however, does not foreclose jurisdictional attacks which assert that the state could not constitutionally prosecute. *Menna v. New York,* 423 U.S. 61, 63 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975) (per curiam) (prosecution barred by Double Jeopardy Clause); *Blackledge v. Perry,* 417 U.S. 21, 30–31, 94 S.Ct. 2098, 2103–04, 40 L.Ed.2d 628 (1974) (prosecution barred by Due Process Clause); *Haynes v. United States,* 390 U.S. 85, 87 n. 2, 88 S.Ct. 722, 725 n. 2, 19 L.Ed.2d 923 (1968) (raising previously asserted claim that prosecution barred because statute unconstitutional under Fifth Amendment right against self-incrimination); *see generally United States v. Curcio,* 712 F.2d 1532, 1538 n. 10 (2nd Cir.1983) (citing Westen, *A Way from Waiver: A Rationale for Forfeiture of Constitutional Rights in Criminal Procedure,* 75 MICH.L.REV. 1214 (1977)). Nor does a valid guilty plea preclude the assertion in federal habeas corpus proceedings of constitutional claims which were not forfeited under state law by entry of the plea. *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). And the loss of constitutional

pleas, while Rule 32(e) provides a remedial mechanism for their withdrawal where the interests of justice so require. On appeal, this court rigorously scrutinizes both proceedings to ensure that the vast majority of criminal defendants who plead guilty have truly abandoned their constitutional right to a trial with its attendant safeguards.

An accused can successfully move to withdraw a guilty plea under Rule 32(e)[5] by establishing either of two independent grounds. The first is proven if the defendant shows that there was a fatal defect in the Rule 11 proceeding at which the guilty plea was entered.[6] Paragraph (d) of Rule 11 obliges the trial court to ensure that "any guilty plea represent a voluntary and intelligent choice among the alternative courses of action open to the defendant," *Byrd v. United States*, 377 A.2d 400, 404 (D.C.1977), while paragraph (f) puts an additional obligation on the court to make "such inquiry as shall satisfy it that there is a factual basis for the plea." Failure by

the court to meet these Rule 11 standards will require the subsequent grant of a Rule 32(e) withdrawal motion unless it is apparent, under the terms of Rule 11(h), that any variance was purely technical and affects no substantial right in any way.[7] *McCarthy, supra* note 4, 394 U.S. at 471–72, 89 S.Ct. at 1173–74; *United States v. Barker*, 168 U.S.App.D.C. 312, 325–26, 514 F.2d 208, 221–22 (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). The strictness of our review of Rule 11 violations is necessary because a guilty plea cannot have the effect of waiving constitutional rights without due process, *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (quoted in *McCarthy, supra* note 4, 394 U.S. at 466, 89 S.Ct. at 1171).

Another way in which an accused can seek to withdraw a guilty plea under Rule 32(e) is by showing, not that the Rule 11 proceeding was defective, but rather that justice demands withdrawal in the cir-

---

claims occasioned by the guilty plea does not extend beyond the confines of the criminal proceeding itself. *Haring v. Prosise*, 462 U.S. 306, 322–23, 103 S.Ct. 2368, 2377–78, 76 L.Ed.2d 595 (1983) (42 U.S.C. § 1983 claims survive guilty plea).

5. Super.Ct.Crim.R. 32(e) provides:

*Withdrawal of plea of guilty.* A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his [or her] plea.

Rule 32(e) is substantially identical to Fed.R. Crim.P. 32(d); this court frequently borrows from federal caselaw to assist in our interpretation of it.

6. Super.Ct.Crim.R. 11 provides, in relevant part:

(d) *Insuring that the plea is voluntary.* The Court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is *voluntary and not the result of force or threats or of promises* apart from a plea agreement. The Court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecutor and the defendant or his [or her] attorney.

\* \* \* \* \* \*

(f) *Determining accuracy of plea.* Notwithstanding the acceptance of a plea of guilty, the Court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is *a factual basis* for the plea.

(g) *Record of proceedings.* A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the Court's *advice to the defendant,* the *inquiry into the voluntariness of the plea* including any plea agreement, and the *inquiry into the accuracy of a guilty plea.*

(h) *Harmless error.* Any variance from the procedures required by this Rule which does not affect substantial rights shall be disregarded.

Emphasis partially added. Rule 11 is substantially identical to Fed.R.Crim.P. 11 and, like Rule 32(e), we often draw from federal caselaw to interpret it.

7. The Supreme Court has found on direct appeal that "prejudice inheres in a failure to comply with Rule 11," *McCarthy, supra* note 4, 394 U.S. at 471, 89 S.Ct. at 1173; *see, e.g., Canady v. United States,* 554 F.2d 203, 205 (5th Cir.1977), but has found a Rule 11 violation concerning "the formal requirements of the [r]ule" to be purely technical on a postconviction collateral attack, *United States v. Timmreck,* 441 U.S. 780, 784–85, 99 S.Ct. 2085, 2088, 60 L.Ed.2d 634 (1979).

cumstances of the individual case. This latter route, understandably, will most frequently be relied upon by defendants whose guilty pleas are not vulnerable to attack for violation of Rule 11. *E.g., Gearhart v. United States,* 106 U.S.App.D.C. 270, 273–74, 272 F.2d 499, 502–03 (1959). The standard to be applied to these defendants—unlike that applicable to those whose guilty pleas were not shown at the Rule 11 proceeding to be voluntary, intelligent and supported by a factual basis—varies depending on whether the withdrawal motion is brought before or after sentencing. In such cases, a presentence withdrawal motion is regarded much more leniently and should be granted "if for any reason the granting of the privilege seems fair and just." *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); *see also Taylor v. United States,* 366 A.2d 444, 447 (D.C.1976) (per curiam); *Jordan v. United States,* 350 A.2d 735, 737 (D.C.1976). On fair and just motions, "[l]eave to withdraw a guilty plea prior to sentencing should be freely allowed." *Poole v. United States,* 102 U.S. App.D.C. 71, 75, 250 F.2d 396, 400 (1957) (citations omitted). A withdrawal motion which does not establish a Rule 11 violation and is brought after sentencing, however, will prevail only upon a showing of "manifest injustice." *Shepard v. United States,* 363 A.2d 291, 293 (D.C.1976); *Bettis v. United States,* 325 A.2d 190, 195 (D.C. 1974). Whether brought before or after sentence, these motions are addressed to the sound discretion of the trial court and we reverse only upon a showing of abuse of such discretion. *Lorimer v. United States,* 425 A.2d 1306, 1308 (D.C.1981) (per curiam).

The fair and just standard, which governs presentence withdrawal motions absent a Rule 11 violation is viewed in light of a number of factors. None of these factors is controlling and the trial court must consider them cumulatively in the context of the individual case. Where the accused asserts, but fails to establish, a Rule 11 violation, the trial court should nonetheless consider the fair and just factors in order to determine whether that alternative standard demands that the withdrawal motion be granted. "We would caution the trial courts that, when faced with a presentencing request for withdrawal of a guilty plea, full inquiry should be made beyond the confines of the Rule 11 hearing." *Taylor, supra,* 366 A.2d at 447.

One important factor in these fair and just withdrawal motions is whether the defendant has asserted his or her legal innocence.[8] *Everett v. United States,* 119 U.S. 60, 63 n. 10, 336 F.2d 979, 982 n. 10 (1964). Such an assertion standing alone does not, of course, require that the motion be granted. *Patterson v. United States,* 479 A.2d 335, 340 (D.C.1984); *Austin v. United States,* 356 A.2d 648, 649 (D.C.1976) (per curiam). However, "[w]here the accused seeks to withdraw his [or her] plea of guilty before sentencing on the ground that he [or she] has a defense to the charge, the ... [c]ourt should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant." *Gearhart, supra,* 106 U.S.App.D.C. at 273, 272 F.2d at 502. On the other hand, the court may consider a weak government proffer of evidence to prove guilt. *Cf. Taylor, supra,* 366 A.2d at 447. Where innocence is as-

---

8. Although important, a claim of legal innocence such as that made by appellant is not dispositive either way in determining, where a Rule 11 violation is not at issue, whether it is fair and just that a presentence withdrawal motion be granted. *See Taylor, supra,* 366 A.2d at 447 ("one relevant consideration"); *Barker, supra,* 168 U.S.App.D.C. at 324, 514 F.2d at 220 ("an important factor"); *Everett, supra,* 119 U.S. App.D.C. at 63 n. 10, 336 F.2d at 982 n. 10 ("not in itself dispositive"); *accord, Nagelberg v. United States,* 377 U.S. 266, 266–67, 84 S.Ct. 1252, 1252–53, 12 L.Ed.2d 290 (1964) (per curiam)

(court has discretion to permit presentence withdrawal of guilty plea on grounds not including assertion of legal innocence). The dissent is therefore mistaken in describing "[a]n assertion of innocence [as] virtually a prerequisite to withdrawal of a voluntary plea." *See* dissent, 513 A.2d at 1342. Similarly, the dissent throughout mischaracterizes a claim of innocence as "an independent ground justifying withdrawal of a guilty plea," rather than correctly treating it as one of many factors to be considered under the presentence fair and just standard. *Id.* at 1341.

serted, the court should consider, according to the circumstances of the particular case, the reason why the claimed defense was not put forward at the time of original pleading. *Barker, supra,* 168 U.S.App. D.C. at 325, 514 F.2d at 221.

▉▉▉ The court should look also to the length of delay between entry of the guilty plea and the desire to withdraw it: "A swift change of heart is itself a strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the government's legitimate interests." *Id.* at 326, 514 F.2d at 222. Withdrawal motions promptly made are regarded with "particular favor." *United States v. Roberts,* 187 U.S.App.D.C. 90, 99, 570 F.2d 999, 1008 (1977). Where there has been a delay, regard may be had to whether the government would be prejudiced by withdrawal of the plea, *United States v. Strauss,* 563 F.2d 127, 130–31 (4th Cir. 1977); *United States v. Savage,* 561 F.2d 554, 556–57 (4th Cir.1977), and "where such prejudice is absent or minimal, withdrawal is routinely permitted," *Roberts, supra,* 187 U.S.App.D.C. at 102, 570 F.2d at 1011.[9] Prejudice to the government's legitimate interests is measured as of the time at which the defendant seeks to withdraw the guilty plea, not later. *Id.* at 102 n. 51, 570 F.2d at 1011 n. 51. Another consideration is whether the accused has had the full benefit of competent counsel at all relevant times. *Barker, supra,* 168 U.S.App.D.C. at 326, 514 F.2d at 221. The circumstances of the individual case may reveal other factors which will affect the calculation as to withdrawal of the guilty plea under the fair and just standard.

Appellant argued in the trial court that it would be fair and just that his guilty plea be withdrawn. In view of the fact that appellant sought to withdraw his guilty plea almost immediately after its entry, the trial court was correct in accepting the fair and just standard as controlling. In concluding that the trial court abused its dis-

cretion in denying withdrawal of the plea under that standard, we balance the relevant factors which should properly have been considered.

## III

### *Appellant's Assertion of Innocence*

▉▉ Appellant asserted his innocence by unequivocally insisting upon the existence of a coercion defense on several occasions before, during and after the withdrawal motion. He testified at the hearing on the motion, for example, as follows:

DEFENSE COUNSEL: During the course of these transactions with Mr. Bass and the complainants, were you acting independently or were you following somebody's instructions?

APPELLANT: Following somebody's instructions.

Q. Whose instructions were you following?

A. Kenneth Bass.

\*　　\*　　\*　　\*　　\*　　\*

Q. Did you have a belief what would happen to you if you didn't follow Mr. Bass' instructions?

A. Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

Q. What was that belief?

A. That I would possibly be harmed or maybe even killed.

Appellant told the court that he feared for the lives of the victims, himself, and his family, should he abandon Bass and depart the scene of the kidnapping. He thought: "that if I were to leave and that if some mischief befell Mr. Bass that I would in turn be subject to possible harm or death, along with members of my family." Appellant testified that he also feared that harm would come to the victims if he left Bass and he "knew that if something were to happen to them that I would possibly be facing some inconsequences [sic] as a result of that."

**9.** *See also* STANDARDS FOR CRIMINAL JUSTICE § 14–2.-1(a) (1980) ("After entry of a plea of guilty or nolo contendere and before sentence, the court should allow the defendant to withdraw the plea for any fair and just reason unless the prosecution has been *substantially prejudiced* by reliance on the defendant's plea") (emphasis added).

Appellant's fears of Bass stemmed from their acquaintance in prison in North Carolina, where appellant was introduced by other prisoners to the Moorish Science Temple of America, a group with which he is no longer associated. According to appellant, on several occasions Bass had told him that "if a member, you might say, betrayed another member, or turned against another member, that the wrath that would come upon him would be greater than any torture he had ever known." Appellant further testified to his understanding that Bass had served time for contract murder and had the names, addresses and telephone numbers of appellant himself and members of his family. He told the court that these facts had influenced him not to take an opportunity he had to escape from the scene of the kidnapping.[10]

Appellant's former counsel also testified at the hearing on the Rule 32(e) withdrawal motion. She told the court that appellant had informed her—prior to entry of the guilty plea—of his fears of Bass during the commission of the crime:

He said that Bass was acting like a crazy person, [appellant] was afraid about the religious aspects, and religious retaliation. Bass was acting very bizarre and violent, and [appellant] was afraid that if he were to leave, that Bass would come after him, because he knew where he lived. He knew where his family was. I know that Mr. Gooding's family was also afraid of Bass.

Having listened to appellant's fears, his counsel then discussed a possible coercion defense with colleagues in her office. The coercion defense was eventually rejected in favor of the guilty plea, partly because of

appellant's refusal to testify due to his fear of Bass.

Thus, the record confirms that appellant had talked to his counsel about his coercion defense before the Rule 11 proceeding entering the plea on November 30, 1983.[11] While the coercion defense was not expressly raised during entry of the guilty plea, appellant's cryptic responses were entirely consistent with it.[12]

Thus the record shows the following colloquy:

THE COURT: Are you pleading guilty to this count of unarmed kidnapping because you committed the crime?

APPELLANT: In that respect, yes sir.

THE COURT: There's not going to be any hedging here.

APPELLANT: In a respect.

DEFENSE COUNSEL: Yes.

THE COURT: All right. I'll hear the government's proffer.

After an inconclusive government proffer of guilt, see *infra* note 18 and accompanying text, the exchange continued:

THE COURT: What I need to know now is did you or did you not participate as a knowing associate in the undertaking in the kidnapping as I have described it to you of Mr. Lawrence McIntyre?

APPELLANT: Yes, Your Honor, I participated knowingly, however, I would like it to be noted unwillingly. It was knowingly.

THE COURT: You did it voluntarily but you had reservations, is that what you're saying?

APPELLANT: Yes, sir.

After the plea was entered, appellant asserted the coercion defense in his written Rule 32(e) motion to withdraw the plea,[13] at

10. Appellant testified that he and McIntyre were in one of a "convoy" of two cars driven to Baltimore; Bass and the second hostage were in the other. The court was told that appellant gave McIntyre an opportunity to escape. McIntyre declined, perhaps out of concern for his fellow captive, and was handed back to Bass. According to the testimony, appellant made no attempt to escape at that time because he feared for the victims, his family and himself.

11. Hearing on Motion to Withdraw Plea of Guilty, morning session, transcript at 21, 31–35,

47–50, 74–75, 81–92 (April 23, 1984); *id.*, afternoon session, transcript at 4, 13–17; Proceedings on trial court's denial of Motion to Withdraw Plea of Guilty, transcript at 4 (May 18, 1984).

12. Proceedings on trial court's entry of guilty plea, transcript at 7–9 (Nov. 30, 1983).

13. Motion to Withdraw Plea of Guilty, record at 53, 60–61 (Jan. 30, 1984) ("Counsel has determined that the defendant's conduct herein con-

the hearing on the withdrawal motion [14] in proposed findings of fact and conclusions of law filed after the withdrawal motion,[15] and in this court on appeal from denial of the withdrawal motion.[16] Appellant's repeated assertions of legal innocence throughout these proceedings weigh heavily in favor of the conclusion that withdrawal of the guilty plea would be fair and just.[17]

### The Government's Inconclusive Proffer

Nothing in the government proffer at the time the guilty plea was entered negates appellant's claim that his participation was coerced by fear of Bass.[18] Many of the acts described—for example the abduction and handcuffing at gunpoint—took place before appellant's arrival on the scene and most of the remainder—including the assault with the gun—were apparently done by Bass and the third participant who escaped apprehension.[19] Even if proved in its entirety, therefore, the government proffer would not necessarily defeat appellant's claim of innocence. The weakness of the government proffer tends towards withdrawal.

### The Reason why the Asserted Defense was not put forward at the Time of Original Pleading

Another factor in the fair and just calculation is the reason why the asserted defense was not put forward at the time of original pleading. In this regard we note again that the language in which appellant's guilty plea was couched—"Your Honor, I participated knowingly, however, I would like it to be noted unwillingly"—is by no means inconsistent with the coercion theory urged at the withdrawal motion. *See supra* at p. 308. But it was not until the withdrawal motion that appellant explicitly addressed his coercion defense to the attention of the trial court. The reason why this defense was not formally asserted at or before the Rule 11 plea proceeding is a factor to be considered in determining

sisted virtually only of following codefendant Bass' instructions ... [and that] the defendant believed that his failure to do so would have resulted in death or serious bodily injury to himself at the hands of Bass, and that the defendant did not believe that he had a reasonable opportunity to escape without following Bass' orders").

14. Hearing on Motion to Withdraw Plea of Guilty, morning session, *supra* note 11, transcript at 6–7, 19–20, 23–25, 32–34, 56, 61–62.

15. Proposed Findings of Fact and Conclusions of Law on Defendant's Motion to Withdraw his previously Entered Plea of Guilty, record at 88, 98 (May 16, 1984).

16. Brief for Appellant at 8–10 (April 26, 1985).

17. We are bound, as is our dissenting colleague, by authority which forbids us from speculating on the merits of appellant's asserted coercion defense. *Gearhart, supra*, 106 U.S.App.D.C. at 273, 272 F.2d at 502. We note in passing, however, that the trial court, which was in a better vantage point than we are, accepted at least some substance in appellant's claim of innocence, as did the government. During sentencing, immediately after its denial of the withdrawal motion, the trial court remarked: "just as you were afraid of Mr. Bass, the community is afraid of you" and, at another point, "[j]ust as you feared Mr. Bass, I'm sure the [victims] feared him as much if not more." Counsel for the government had previously declared:

Your Honor, I have been struck by, by what Mr. Gooding felt would befall him. All that I, that the government can say in that regard is that it is the very kind of fear that Mr. Gooding has that promotes that same kind of fear in other people. He participated in this situation because he was afraid that somebody else would hurt him. Yet he hurt somebody else, promoting this entire myth of this sect that one who betrays it is going to have some great catastrophe befall him.

18. The entire government proffer was as follows:

Your Honor, the government's evidence at trial would show that on April 5th and April 6th of 1982, the complainant in this case, Mr. Lawrence McIntyre, was held against his will and abducted against his will by the defendant and others. The kidnapping began at 12th and New York Avenue, Northwest, here in the District of Columbia, where the complainant was abducted at point of gun. He was handcuffed there, he was—there was someone who stood guard over him for a period of time. He was then moved against his will up to Baltimore, Maryland, and Springfield, Virginia. All against his will during the course of which he was also assaulted with a gun.

19. During entry of the plea, appellant's counsel alerted the trial court to the inadequacy of the government proffer.

whether or not to grant the withdrawal motion.

The trial court described appellant's explanation as his fear of reprisals against himself and his family by Bass and other members of the Moorish Science Temple of America if he went to trial. In the words of the trial court when it denied the guilty plea withdrawal motion, "[t]he defendant now asserts that although he is no longer a member of that sect, he would be exposed to retribution by other members and, specifically, the codefendant should the defendant betray the codefendant." In this respect the reason given for failing to previously assert the coercion defense, although conceptually distinct, overlapped with the asserted coercion defense itself.

The trial court's own words and actions belied its conclusion, in denying the withdrawal motion, that appellant's fears of Bass if he went to trial were "speculative." On three separate occasions the trial court ordered the entire record in the case sealed in order to protect appellant from Bass. At the end of the hearing on the withdrawal motion, but before its denial, the trial court ordered that appellant be afforded protective custody in light of a recent assault upon him while in custody by unknown assailants. The trial court described efforts to segregate appellant from members of the Moorish sect as "worthy requests" and observed that it was "concerned about Mr. Gooding's safety." The trial court further demonstrated its belief that appellant's fears were legitimate by ordering a separation from Bass while in custody, "so that at the appropriate time Mr. Gooding can be put somewhere that, where he will be free from the jeopardy that we are all concerned about." Immediately after denial of the plea withdrawal motion, and just prior to sentencing, the government informed the trial court that it was prosecuting Bass for a prison breach. The trial court's and the government's remarks during sentencing similarly showed their recognition that appellant's fears of

his codefendant were genuine. *See supra* note 17.

In addition, appellant's former counsel testified that, prior to entry of the guilty plea, appellant "was afraid of any court proceeding where he would have to say anything one way or the other about Bass." Appellant's refusal to testify due to fear of Bass, coupled with the fact that coercion "is a very difficult defense to raise," prompted his counsel to discourage him from reliance upon that defense. She told the trial court that appellant

> did not want to testify. And that the only way that this defense would even have a prayer of a chance is that Mr. Gooding were to testify all about Mr. Bass and why he was afraid of him and all of Mr. Bass' extremely erratic actions and why he was afraid of him. And Mr. Gooding doesn't want Mr. Bass to hear about this.

The uncontradicted testimony of appellant's former attorney casts further doubt on the question whether the guilty plea represented "a voluntary and intelligent choice between the alternative courses of action open to [appellant]."[20] *Byrd, supra,* 377 A.2d at 404.

It is unnecessary for us to conclusively evaluate appellant's fear of reprisals against himself and his family as the reason why he failed to assert the coercion defense at the time of original pleading. Presentence withdrawal motions are to be freely allowed. The evidence at the disposal of the trial court was sufficient to rank as a positive factor in the fair and just calculation appellant's fear of Bass as a reason for not invoking the coercion defense at the time of original pleading.

*The Length of Delay between Entry of the Guilty Plea and the Desire to Withdraw it*

Next, we turn to the delay of only a few days between entry of the guilty plea on November 30, 1983, and the expression of appellant's desire to withdraw it. Appellant testified that, due to the particular section of the jail in which he was housed,

---

**20.** This testimony was not discredited. The trial court relied upon it to dispose of appellant's

alternative claim of ineffective assistance of counsel.

he had no access to the law library until the day after entering the plea. Then, upon discovering the full consequences involved, he immediately placed a call to the attorney who represented him at that time and informed her that he was seriously considering its withdrawal. About a week later, appellant notified the trial court to the same effect, whereupon new counsel was appointed to represent him. A formal motion to withdraw the guilty plea, together with points and authorities, was filed on January 30, testimony was presented on April 23, and the motion was denied on May 18, 1984. There can be no suggestion that undue delay either cast doubt on appellant's asserted reason for failing to raise the coercion defense earlier or prejudiced the government's legitimate interests. This factor accordingly lends considerable weight in favor of withdrawal of the guilty plea under the fair and just standard.

### Prejudice to the Government

The government has made no claim of prejudice to its legitimate interests nor, presumably, could it do so, given the speed with which appellant moved to withdraw the guilty plea. The lack of prejudice to the government favors withdrawal.

### The Competent Assistance of Counsel

Finally, we note the trial court's finding that appellant had the benefit of competent counsel at the time the plea was entered. Although such a finding adds weight to its conclusion that withdrawal of the guilty plea would not be fair and just, the impact is to some extent reduced by the circumstances of this case. First, the inherent ambiguity in appellant's responses at the time the guilty plea was entered implies the possibility of some confusion as to the nature of the coercion defense, irrespective of the ability with which he was advised by counsel. Second, appellant's testimony throughout the motion to withdraw the guilty plea was consistent with this possibility.[21] Third, the testimony of his counsel at the time the plea was entered corrobo-

rated appellant's fear of Bass as a reason for entry of the guilty plea. Fourth, the speed with which appellant attempted to change his plea and obtain new counsel after pleading guilty suggests a breakdown in communication at some point, even if neither attorney nor client was at fault. These considerations reduce to some extent the tendency of the existence of competent counsel to weigh against a finding that withdrawal of the guilty plea would be fair and just.

With the qualified exception of the benefit of competent counsel, all of the factors we have identified weigh more or less in favor of the conclusion that withdrawal of the guilty plea should have been allowed. Although, as we have already noted, the decision whether or not to grant the motion is vested in the sound discretion of the trial court, we conclude that this discretion has been abused. Appellant's motion was brought prior to sentence and he was, therefore, not required to show manifest injustice. Instead, appellant had to cross a much lower threshold. He was obliged to show only that, for any reason, it was fair and just that his plea be withdrawn. We think that the facts of this case amply support such a showing and that in denying his motion to change the plea the trial court set a standard beyond that which appellant was required to reach. Prior to sentencing, leave to withdraw guilty pleas under the fair and just standard should be freely allowed. *Durante v. United States*, 309 A.2d 321, 323 (D.C. 1973); *United States v. Morgan*, 185 U.S. App.D.C. 372, 386, 567 F.2d 479, 493 (1977); *Poole, supra*, 102 U.S.App.D.C. at 75, 250 F.2d at 400. Applying this guiding principle to the record before us, we must conclude that "the trial court's action was [not] within the range of permissible alternatives." *Johnson v. United States*, 398 A.2d 354, 367 (D.C.1979). In the totality of the circumstances of this case, it was fair and just that the Rule 32(e) withdrawal

---

21. Appellant testified: "In my mind ... I was never ... considered myself as being guilty of that crime that I pleaded guilty to." And, at another point:

What I would like to say is that as far as my guilt or innocence would—in my opinion

would be dependent on the person that is interpreting it. I'm not saying that I wasn't present during these events, I'm merely saying that any participation that I'm alleged to have had concerning this was not willingly or voluntary. I'm not saying that it didn't occur.

motion be granted.[22] We reverse so that appellant can have the opportunity to put his asserted coercion defense before a jury.

*Reversed and remanded for further proceedings in accordance with this opinion.*

FERREN, Associate Judge, dissenting:

I respectfully dissent. I incorporate the views expressed when this case originally was before the division, *Gooding v. United States,* 513 A.2d 1320, 1335 (D.C.1986) (Ferren, J., dissenting). Particularly responsive to the division majority on rehearing are Parts III. and IV. of the dissent.

22. Significantly, our dissenting colleague concurs with our evaluation of all but one of the factors relevant to the conclusion that withdrawal of the guilty plea would be fair and just. Specifically, in the order in which they appear in Part III of our opinion, the dissent acknowledges that: (1) the government's proffer was "not inconsistent with a coercion defense," 513 A.2d at 1342–43 n. 16; (2) the record provides support for appellant's explanation for not asserting his coercion defense at the time of original pleading ("The trial court did accept that appellant had feared Bass"), *see id.* at 1339; (3) "appellant took immediate steps to withdraw his plea," *see id.* at 1342–43 n. 16; and (4) "the government has not specifically shown how it would be prejudiced from withdrawal of appellant's guilty plea," *see id.* There is no dispute between us that one factor, the competent assistance of counsel, supports the trial court's ruling.

The dissent's unstated, but necessary, conclusion that withdrawal of the plea would not be fair and just rests solely on its analysis of the one remaining factor, *i.e.,* whether appellant claimed legal innocence. On this issue, the dissent's inquiry into the merits of appellant's asserted coercion defense "seriously misconceives the ... court's role" in these withdrawal motions. *Morgan, supra,* 106 U.S.App.D.C. at 386, 567 F.2d at 493 (citing *Gearhart, supra,* 106 U.S.App.D.C. at 273, 272 F.2d at 502). Even if it were not forbidden, the dissent's analysis of the asserted coercion defense wrongly focuses on when the threats were made, ignoring the real question for the factfinder—whether appellant had "a well-grounded apprehension of immediate death or serious bodily injury." *Stewart v. United States,* 370 A.2d 1374, 1377 (D.C.1977).

Also unsupported is the dissent's position that the absence of a claim of innocence—a claim which repeatedly appears in the record of this case—would in any event somehow automatically override all the other relevant factors. By requiring the accused to convince the court of his or her innocence before getting to a jury, the dissent would replace the time-honored presentence fair and just standard with the strictest of postsentence manifest injustice standards.