Alphonso **WILLIAMS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 93–CO–1062.

District of Columbia Court of Appeals.

Argued Feb. 15, 1995.

Decided March 27, 1995.

---

Richard K. Gilbert, appointed by the court, Washington, DC, for appellant.

Richard J. Nelson, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Bruce L. Delaplaine, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before STEADMAN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

Appellant entered a plea of guilty to attempted robbery while armed (D.C.Code §§ 22–2902, –3202 (1989 & Supp.1994)) and carrying a pistol without a license (*id.* § 22–3204(a) (Supp.1994)). More than fifteen months after the imposition of sentence, he moved to withdraw the guilty plea on the ground that his plea agreement with the government, which the trial judge had accepted, violated Rule 11(e) of the Superior Court Rules of Criminal Procedure because it provided that the agreement would be "void" if the court exercised a particular sentencing option. The trial judge, in retrospect, agreed that the plea had violated Rule 11(e), but denied the motion to withdraw because appellant had not shown "manifest injustice" under Super.Ct.Crim.R. 32(e) or D.C.Code § 23–110 (1989). We affirm.

**I.**

A four count indictment charged appellant with felony murder while armed (D.C.Code §§ 22–2401, –3202 (1989 & Supp.1994)) and related offenses which arose from the fatal shooting of Robert Williams in the course of an attempted robbery. On June 17, 1991, appellant, who was nineteen years old at the time, signed a written agreement with the prosecutor by which he would plead guilty to attempted armed robbery and carrying a pistol without a license, in exchange for which the government would dismiss the other charges arising from the homicide. The agreement provided that the government reserved the right to recommend the maximum sentence, *i.e.*, fifteen years to life and one year of imprisonment, respectively, for the two plea charges. It then stated, in the language which prompted appellant's later motion to withdraw:

Mr. Williams *waives his right to request that he be sentenced under the Youth Rehabilitation Act and he further agrees that this plea agreement will be void if he is sentenced under this Act.* Therefore, *the judge must sentence Mr. Williams to the mandatory minimum sentence of five to fifteen years at the very least.* Mr. Williams reserves the right to request lenient sentencing and understands that ultimately, his sentence is a matter solely within the discretion of the judge. The judge is not a party to this agreement and may impose any sentence which he or she deems appropriate, so long as it does not

exceed the maximum permissible term of incarceration. [Emphasis added.]

Above appellant's signature was a "Defendant's Acknowledgment and Acceptance" indicating that he had carefully reviewed the agreement with his attorney, understood it, and agreed to be bound by it. His attorney signed a "Counsel's Acknowledgment" stating that he had discussed each part of the agreement with appellant and that, in his opinion, appellant's decision to enter it was "informed and voluntary."

When appellant's change of plea came before the court on June 17, 1991, the trial judge expressed concern about the asserted waiver of appellant's right to a Youth Rehabilitation Act (YRA)[1] sentence, stating that, "[a]s you know in this Court, plea agreements with respect to sentencing don't bind. judges. And I will not be a party to any kind of agreement with respect to what the appropriate sentence in the case will or will not be." The judge had "no idea" at that point whether the YRA option "will be an appropriate sentence in this case," but explained that, "given this agreement, I almost certainly will send Mr. Williams ultimately for a Youth Act study[2] so that I can completely satisfy myself that that will not be the appropriate sentence here." The reason for this was that

> I understand that if I were to sentence him [under the YRA], *the agreement would be null and void.* But I want to make it absolutely clear before I ask Mr. Williams the first question on what [h]is date of birth is that I don't intend to be limited in my sentencing options. And if I think he should get the Youth Act sentence for some reason, I'll give it to him *and the plea will be void.* [Emphasis added.]

In response to the judge's concern about the effect of a YRA sentence on the agreement, appellant's counsel stated:

> I think both parties understood and anticipated the Court's concern on that score. I think the Court should understand that separate and apart from this agreement I would not be asking for a Youth Act study. For reasons unrelated to the plea, I've had many clients, and Mr. Williams is one of them, who have heard enough bad things about the Youth Center and he would prefer to forego that option.

The judge noted her previous experience of having "defendants request[ ] not to be sentenced under the Youth Act," and appellant's counsel reiterated that he would "like to be heard at some point about the reasons why we believe that even though we understand that it has some potential adverse consequences for Mr. Williams, . . . we would prefer that the Court forego that option [*i.e.*, a YRA sentence]."

The judge then conducted the plea inquiry required by Rule 11(d). In the course of this she explained that by giving up his right to YRA sentencing, appellant was giving up the set-aside possibility under that statute (D.C.Code § 24–806) as well as the possibility of avoiding the mandatory minimum sentence. She also made certain he understood that were she to sentence him under the YRA, the entire plea "would become invalid."[3] Knowing these facts, appellant was asked specifically whether he "wish[ed] to give up the right to be sentenced under the Youth Rehabilitation Act," and answered, "Yes, ma'am." After·hearing the government's factual proffer as to the underlying shooting and robbery, the judge questioned appellant further and then accepted his plea as voluntary and factually supported.

---

1. See D.C.Code § 24–801 *et seq.* (1989 & Supp. 1994).

2. D.C.Code § 24–803(e) provides that "[i]f the court desires additional information as to whether a youth offender will derive benefit from treatment under . . . this section, the court may order that the youth offender be committed for observation and study at an appropriate classification center or agency."

3. THE COURT: Because what the Government is saying is if I'm going to give you Youth Act time, they're not going to let you plead guilty to attempted robbery while armed and carrying a pistol without a license. Do you understand that?
THE DEFENDANT: Yes.

In the ensuing discussion of a sentencing date and the possibility that the judge would nonetheless send appellant for a YRA study, the prosecutor for the first time addressed the waiver provision, stating that it was "based upon representations from [defense counsel] that his client was not interested in the Youth Act" and the prosecutor's corresponding desire "to limit the likelihood that [appellant] would receive a Youth Act [sentence]." What the prosecutor had hoped to forestall was the possibility "that perhaps through silence, [appellant] could technically waive his right, but nonetheless in a sense hope to get a Youth Act sentence." When the prosecutor added that the provision "was not designed to specifically restrict the Court's discretion," the judge replied that "I've indicated that I don't intend to let it have that effect. . . ." She added that it was unfortunate, "since we're available to begin the case for trial this morning[,] to have a provision in here which could end up voiding [the plea agreement]." But she acknowledged that "I don't remember frankly ever in the past forcing a Youth Act sentence on someone," and again noted that the representations as to appellant's desire to forgo a YRA sentence "sound so familiar to me" and that she had "heard them on a number of occasions in the past."

Sentencing took place on November 6, 1991, by which time the judge had reviewed the pre-sentence report prepared by the Superior Court Social Services Division. It contained no recommendation that appellant be sent for a YRA study. The judge had also received a Victim Impact Statement, *see* D.C.Code § 23–103a (1989), and the prosecutor's memorandum in aid of sentencing, which pointed out that while appellant had not fired the fatal shot, he had supplied the weapon that caused the victim's death. On the basis of all this information, the judge stated at sentencing:

> At the time I took the plea I knew very little about the facts and circumstances of this case and I was not willing to commit myself to any sort of agreement with respect to not getting a youth study.
>
> I know a great deal about the case by now. . . . My position . . . is that if [defendant] wish[es] a Youth Act study I will send [him] for it. I am not going, I'm certainly not going to require a Youth Act study be done.

Appellant's counsel responded that appellant did not wish to be sent for a YRA study. The judge thereupon sentenced appellant to concurrent terms of imprisonment of thirteen years to life for the attempted armed robbery and one year for the pistol offense.

## II.

Following an unsuccessful motion to reduce sentence, appellant wrote a letter to the court challenging the voluntariness of his plea but without reference to the waiver provision of the plea agreement. The trial judge then appointed new counsel to represent appellant. On February 16, 1993, present counsel moved to withdraw and vacate the plea of guilty on the ground that by accepting a plea that would be "void" if the court exercised its discretion to impose a particular (*i.e.,* a YRA) sentence, the judge violated the command of Rule 11(e) that sentencing recommendations of the parties may not bind the court. The judge took the issue under advisement and thereafter issued a lengthy and thoughtful memorandum opinion. She concluded that the plea agreement she had accepted indeed violated Rule 11(e) "by its inclusion of a provision precluding the [c]ourt's consideration of a Youth Act sentence, by voiding the plea if the court would not accept that provision, and by attempting to bargain away the court's sentencing discretion."

Nevertheless, the judge refused to allow appellant to withdraw his plea. Applying the "manifest injustice" standard of Super.Ct.Crim.R. 32(e) to this post-sentence motion to withdraw, the judge found that appellant had suffered no prejudice from the Rule 11 violation. The sole prejudice he claimed was that the agreement had effectively prevented his consideration for a YRA sentence. The judge concluded, however, that appellant's "guilty plea was entered voluntarily, knowingly and intelligently with a full understanding of its consequences [including waiver of a YRA sentence] and that the plea agreement did not constitute undue

coercion." This conclusion was "strongly buttressed" by the repeated representations of appellant and his counsel that appellant "did not wish to be sentenced under the Youth Act." "Had the ill-conceived [waiver] provision never been inserted in the plea letter, there is no reason to believe the same representations would not have been made." Moreover, "once the court had all of the information at hand for sentencing, the [c]ourt had concluded [in any event] that a Youth Act sentence would be utterly inappropriate." Finally, the picture was mixed at best whether appellant even desired a YRA sentence at this late date; the judge saw his motion ultimately as "designed to permit him to withdraw his plea and seek a more lenient sentence from another judge."

## III.

■ The trial judge correctly concluded that a plea agreement "void[able]" by either party if the judge sentenced appellant under the YRA violated Super.Ct.Crim.R. 11(e), and that she should have rejected it. Rule 11(e) provides in relevant part:

(1) In general. The prosecutor and the attorney for the defendant … may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty … to a charged offense or to a lesser or related offense, the prosecutor will …

\* \* \* \* \* \*

(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, *with the understanding that such recommendation or request shall not be binding upon the Court.*

The Court shall not participate in any such discussions.

(2) … If the agreement is of the type specified in subparagraph (e)(1)(B), the Court shall advise the defendant that if the Court does not accept the recommendation or request *the defendant nevertheless has no right to withdraw the plea.* [Emphasis added.]

By expressly making appellant's plea "void" (or voidable at the election of a party) if the judge imposed a YRA sentence, the agreement violated this rule. It formally acknowledged, of course, the judge's independence and discretion to "impose any sentence which he or she deems appropriate, so long as it does not exceed the maximum permissible term of incarceration." But it effectively nullified that discretion by confirming appellant's "waiv[er]" of his right to request a YRA sentence and declaring that "this plea agreement will be void if he is sentenced under this Act." In short, it was an agreement the judge could not accept without relinquishing in part her sentencing discretion, which Rule 11(e) prohibits.

In its brief, the government hedges somewhat on whether "a Rule 11 violation actually occurred here," asserting that the agreement "recognized that the trial court was not bound by its terms" *and* that "the trial court made that independence clear at the plea hearing." Neither point persuades us. The agreement's recognition of the judge's independence was *pro forma* given the right it reserved to either party to "void" the agreement if she exercised her discretion in the undesired way. And while it is true that the judge more than once said she would not be party to an agreement limiting her sentencing discretion, she understood at the plea hearing that she was accepting an agreement whose effect was to do just that.[4] The vice in such an agreement, as she recognized in her memorandum opinion, is the pressure it exerts on a trial judge not to impose a YRA sentence that would only ensure later "void[ance]" of the plea on the government's motion and the defendant's being tried on more serious charges.

In her opinion, the judge discussed at length the differences between Fed. R.Crim.P. 11(e) and its Superior Court counterpart, and the reasons why the courts of this jurisdiction have departed from the federal rule permitting limited "sentence bargaining." We need not retrace that discussion here. We note, however, that while

---

4. "I understand that if I were to sentence him [under the YRA], the agreement would be null and void."

Fed.R.Crim.P. 11(e) permits the parties to "agree that a specific sentence is the appropriate disposition of the case" and the court to "embody in the judgment and sentence the disposition provided for in the plea agreement," *id.* §§ (e)(1)(C) & (e)(3), it states only that the *defendant* is to be "afford[ed] ... the opportunity to then withdraw the plea" if the judge rejects the agreement. That is, it provides no authority for later vacation of a plea on the government's motion if the judge fails to impose the bargained sentence, an option the government reserved to itself in this case.[5]

## IV.

The question we ultimately must decide is whether the judge "clear[ly] abuse[d]" her discretion in denying appellant's motion to withdraw his guilty plea. *Wilson v. United States,* 592 A.2d 1009, 1011 (D.C.1991). That embodies two sub-questions: first, what standard must a defendant meet in order to win post-sentence withdrawal of a plea; and second, did appellant meet that standard?

## A.

Because appellant moved to withdraw the plea only after sentence, the denial is "tested under the 'manifest injustice' standard" of Super.Ct.Crim.R. 32(e). *Id.*[6] Appellant perceives room under our decisions for an argument that *some* violations of Rule 11, even when asserted post-sentence, may be analyzed for prejudice under the (for him) substantially more favorable "harmless error" provision of Rule 11(h).[7] We disagree. In *Johnson v. United States,* 631 A.2d 871 (D.C. 1993), we cited decisions of both the Supreme Court and this court in stating:

A guilty plea may be withdrawn after sentencing only if the defendant affirma-

tively establishes that the trial court's acceptance of her plea was manifestly unjust, and that the plea proceeding was fundamentally flawed such that there was a complete miscarriage of justice.

*Id.* at 874. We applied this standard in evaluating the appellant's argument "that her plea was involuntary because her counsel and the trial court did not apprise her of the true nature of the charge against her," *id.* at 875, contrary to a primary requirement of Rule 11. *See* Super.Ct.Crim.R. 11(c)(1). We can apply no lesser standard to the violation here of Rule 11's prohibition of a sentence bargain binding on the court. *Wilson,* 592 A.2d at 1011 (applying manifest injustice standard to claim that judge "agreed to impose a sentence as part of the plea agreement"). *See also Holland v. United States,* 584 A.2d 13, 16 (D.C.1990); *Goodall v. United States, supra* note 6, 584 A.2d at 563–64; *Byrd v. United States,* 377 A.2d 400, 405 (D.C.1977). "'The more severe standard [governing post-sentence motions] is applied to avoid motions for withdrawal based on disappointment in the terms of the sentence.'" *Bettis v. United States,* 325 A.2d 190, 195 (D.C.1974) (citation omitted).

Appellant relies on *Gooding v. United States,* 529 A.2d 301 (D.C.1987), in which a division of this court suggested that a non-technical Rule 11 defect that affects substantial rights is enough to warrant reversal, and that the manifest injustice standard applies only when a defendant attacks his plea on grounds other than Rule 11. *Id.* at 305–06. That discussion prompted the court in *Eldridge v. United States,* 618 A.2d 690 (D.C. 1992), to pose but not answer the question "whether there is any real difference between the two approaches," [*i.e.,* harmless error and manifest injustice.] *Id.* at 695 n. 4.

---

5. In view of the sentence imposed, we have no occasion to consider whether, had the judge sentenced appellant under the YRA, the government could have enforced the waiver provision by obtaining nullification of the plea.

6. "A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the Court after sentence may set aside the judgment of conviction and permit the defendant to with-

draw the plea." Super.Ct.Crim.R. 32(e). The standard is the same—"manifest injustice"—if the issue is instead analyzed under the post-conviction statute, D.C.Code § 23–110. *Goodall v. United States,* 584 A.2d 560, 562 n. 5 (D.C. 1990).

7. "Any variance from the procedures required by this Rule which does not affect substantial rights shall be disregarded." Super.Ct.Crim.R. 11(h).

But *Gooding*'s suggestion of non-application of the manifest injustice standard to "fatal defect[s] in the Rule 11 proceeding," 529 A.2d at 305, was dictum, because that case concerned a direct appeal from the denial of a *pre*-sentence motion to withdraw a guilty plea. *See also Morton v. United States*, 620 A.2d 1338, 1339 (D.C.1993) (direct appeal); *Springs v. United States*, 614 A.2d 1, 3 (D.C. 1992) (same). To remove any lingering uncertainty, we now make explicit that post-sentence motions to withdraw a plea of guilty are governed by the standard enunciated in *Johnson, supra.* Violation of what appellant terms a "core concern" of Rule 11 (citing *United States v. Adams*, 634 F.2d 830, 838 (5th Cir.1981)), such as failure to inform the defendant of the nature of the charge against him, may go a considerable way toward establishing manifest injustice, *cf. Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), but that standard still must be satisfied.

**B.**

In considering whether appellant has shown the requisite manifest injustice, we must first identify the particular prejudice he asserts. Appellant's able attorney on appeal has made that task easy, as he did below, by conceding that the prejudice at issue concerns only "the fact that the instant plea agreement prevented [appellant's] receiving a more lenient, Youth Rehabilitation Act sentence." That is, appellant does not claim that he pled guilty despite his innocence,[8] or that the trial judge failed in any respect to insure—as Rule 11(c) and (d) require—that his plea was entered knowingly and voluntarily. The government regards these concessions as conclusive, since (it states) appellant "cites no legal precedent in support of his claim that a violation of Rule 11(e) constitutes adequate grounds, in and of itself, for permitting the withdrawal of an otherwise knowing and voluntary guilty plea."

■ It is enough for us to hold, in the circumstances of this case, that the preclusion of YRA sentencing by the agreement did not result in manifest injustice. *First*, in surrendering YRA eligibility, appellant traded one advantage for an arguably much greater one. As the trial judge explained to him at the plea proceeding, the point of the agreement was that the government would not let him plead guilty to attempted murder while armed accompanied by dismissal of the felony murder and other charges without his sacrifice of the YRA option. Appellant's assertion of prejudice thus rests on the conjecture that, denied this agreement tied to the waiver, he would have risked trial on or pled guilty to a greater array of charges including one—murder—that, upon conviction, would have disqualified him from YRA eligibility in any event. D.C.Code § 24–801(6).

*Second*, appellant did not value greatly the benefit he was surrendering. In his words and in those of his veteran attorney from the Public Defender Service, whose representation he does not fault, he insisted at the plea that "separate and apart from this agreement" he "would not be asking for a Youth Act study"—that, indeed, he wanted "to be heard" before the court ever made the referral decision in order to explain why he "would prefer that the [c]ourt forego [the YRA] option." Appellant now tells us that a contrary expression of desire for a YRA study "would have been premature until the plea was set aside and a new agreement reached," but this simply confuses his later (post-sentence) state of mind with his plainly expressed desire at the time of the plea. The Supreme Court's oft-quoted observation in *Blackledge v. Allison*, 431 U.S. 63 (1977), applies fully here:

> [R]epresentations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.

*Id.* at 73–74.

*Third*, in the end, the plea agreement played only a minor role in the judge's deci-

---

8. As he states in his brief, this "is not a case where the defendant's possible innocence is at issue...."

sion to sentence him as an adult. Appellant's reiteration at sentencing of his desire to be sentenced as an adult confirmed a decision the judge already had largely made based on the information she had received in the meantime.[9] As the judge stated in her opinion:

> [O]nce the court had all of the information at hand for sentencing, the [c]ourt had concluded that a Youth Act sentence would be utterly inappropriate
>
> . . . .

The court viewed the crime as a particularly serious one and viewed defendant as responsible for the homicide. As the court told the defendant, it had an obligation to protect the community. The court concluded that a sentence under the Youth Act, which would permit the defendant's release by the parole board "whenever appropriate," D.C.Code § 24–804, would not provide sufficient protection to the community. Thus, the court sentenced the defendant not merely to the mandatory-minimum term of five to fifteen years of incarceration, but to a term of thirteen years to life imprisonment. When later asked to reduce the sentence, the court declined to do so.

Especially on the facts of this case, the judge saw no reason to depart from her past unwillingness to "forc[e] a Youth Act sentence on someone" even to the extent of ordering a YRA study.

*Finally,* appellant acknowledges that some four months after he noted this appeal he turned twenty-two years of age, and is no longer eligible for YRA sentencing. D.C.Code § 24–801(6).[10] The remedy commensurate with the prejudice he claims to have suffered is therefore no longer available

to him. For that reason, as his counsel frankly conceded at oral argument, withdrawal of the guilty plea now would be a surrogate remedy in the form of a chance to go to trial and win acquittal (though he does not claim innocence) or to strike a more favorable deal with the prosecutor.[11] The "manifest injustice" standard of Rule 32(e) does not permit that liberality.

*Affirmed.*

---

9. In her memorandum opinion, the judge summarized at length the pre-sentence report, which did not recommend a YRA study, and the government's memorandum in aid of sentencing, which set forth the related guilty pleas of the codefendants to crimes including (in one case) armed second-degree murder and pointed out that although appellant had not fired the fatal shot, he had supplied the murder weapon, travelled from New York to Washington to sell illegal drugs, and had not entered an early guilty plea but instead waited until three of the codefendants were scheduled to testify against him.

10. Appellant's motion to expedite the appeal, filed a month and a half after the appeal was noted, was denied by this court.

11. In this connection appellant's counsel intimated to the trial court that he was "in possession of information which is legally irrelevant to [the withdrawal] motion but which might well persuade a 'reasonable' prosecutor that some additional leniency is appropriate."