**Randolph WILLIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 82–415.

District of Columbia Court of Appeals.

Argued June 28, 1983.

Decided Nov. 10, 1983.

---

Jean D. O'Malley, Washington, D.C., for appellant.

G. William Currier, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Michael W. Farrell, John R. Fisher, and Catherine R. Mack, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and PRYOR and BELSON, Associate Judges.

NEWMAN, Chief Judge:

Randolph Willis (Willis or appellant) appeals from the trial court's denial of his motion to withdraw his guilty plea. Willis contends that he was mentally incompetent to enter such a plea and that the trial court's denial of his withdrawal motion constituted abuse of discretion. Appellant further asserts that in accepting his plea the trial court failed to follow the requirements of Superior Court Criminal Rule 11 (Rule 11).

Appellant's allegations on appeal arise from the following facts. On August 24, 1978, Willis was arrested and charged with the August 13 armed robbery, rape, and kidnapping of two women. He was held at the Oak Hill Youth Center maximum security unit until he escaped on October 13, 1978. Upon the execution of a bench warrant for his arrest, appellant was returned to Oak Hill. There, pursuant to a court order for forensic screening, he was examined by Dr. Howell J. Howard. The doctor reported Willis competent to stand trial, despite symptoms of depression. Relying upon this assessment, the court, on November 9, 1978, found Willis competent to stand trial without objection.

On December 11, 1978, Willis was charged in an eight-count indictment with armed robbery (D.C.Code §§ 22–2901, –3202), kidnapping while armed (D.C.Code §§ 22–2101, –3202), and carnal knowledge while armed (D.C.Code §§ 22–2801, –3202). He was arraigned ten days later and entered a plea of not guilty. On May 11, 1979, after several status hearings and other proceedings, appellant pleaded guilty under the doctrine announced in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Sentencing was continued until June 22, 1979, with orders to the

Probation Department to prepare a presentence report.

On June 22, 1979, the original sentencing date, the court ordered a study pursuant to 18 U.S.C. § 5010(e) (Youth Corrections Act) to determine whether Willis would benefit from treatment under the Federal Youth Corrections Act. The court set September 4, 1979, as the return date for the study.

Later in the summer, at the request of a psychiatrist with the Forensic Psychiatry Division of the D.C. Department of Human Resources (DHR), the court ordered Willis examined for mental competency. Dr. Howard conducted that examination on September 4. He stated that there was no clinical explanation for appellant's seemingly confused state during the examination, his disruptive behavior, and his suicidal gestures. He concluded, therefore, that Willis was not psychotic and that his behavior was the product of deliberate malingering, a personality disorder, or both.

Ten days later the court ordered a second examination at Dr. Howard's request. The examining psychiatrist, Dr. Edward Kirby, concluded that Willis was deliberately exaggerating his symptoms and was mentally competent.

Some time thereafter the Youth Act study was returned to the trial court. The study reported that by Willis' account he had no recollection of the crimes he had allegedly committed. It also reported that Willis had made numerous suicide attempts, all characterized as "mere attention getting gestures as he always makes these attempts when someone is nearby and his wounds are superficial." Finally, the report concluded that there was "nothing in his behavior or verbalizations . . . which would imply psychosis or severe neurosis."

On November 13, 1979, the court ordered a second Youth Act study to be conducted at a federal designation outside the District of Columbia. The resulting report was forwarded to the court on April 17, 1980. It concluded that Willis did not suffer from acute psychosis, that his asserted amnesia concerning the charged offenses was ques-tionable, and that when his efforts to place the blame on others failed he resorted to "fak[ing] mental illness." The report acknowledged that Willis suffered from personality disorders and stated that a change in his character structure would "only be brought about by maturation," a process assessed to take two to three decades.

On May 13, 1980, the court sentenced appellant as an adult to eight consecutive sentences on each of the counts with which he was charged. The total aggregate sentence was twenty to sixty years.

On July 7, 1981, Willis, through new counsel, submitted a motion to withdraw his previously entered guilty plea pursuant to Superior Court Criminal Rule 32(e) (Rule 32(e)). He asserted that he was not mentally competent to enter a guilty plea. The court denied the motion on February 25, 1982. This appeal followed. Willis contends that the trial court abused its discretion when it denied his post-sentence motion to withdraw his guilty plea. He argues that the court should have granted the motion because he was not competent to stand trial, or if he was, he was not competent to plead guilty.

I

According to Rule 32(e), an appellant may by motion seek to withdraw a plea of guilty, but the trial court may grant the motion where it is filed after sentencing only upon a showing of "manifest injustice." It is the appellant's burden to show "manifest injustice." A Rule 32(e) motion is addressed to the sound discretion of the trial court, whose decision will be disturbed on appeal only upon a showing of abuse of that discretion. *Lorimer v. United States,* 425 A.2d 1306, 1308 (D.C.1981); *Byrd v. United States,* 377 A.2d 400 (D.C.1977); *Taylor v. United States,* 366 A.2d 444 (D.C. 1976); *Shepard v. United States,* 363 A.2d 291 (D.C.1976); *Bettis v. United States,* 325 A.2d 190, 195 (D.C.1974). Willis argues that the forensic screenings and Youth Act studies concluded that he was mentally incom-

petent. Review of those screenings and studies in their entirety reveals, however, that all who examined Willis reported that he did not suffer from psychosis or thought disorders, but was exaggerating his personality disorders and was malingering. Having failed to show that he was mentally incompetent, Willis has also failed to meet his burden of proving manifest injustice.

Appellant's alternative argument requires closer examination. He argues that when the trial court found him competent, that finding referred only to his competence to *stand trial*. He asserts that such a determination was insufficient to establish competence to *enter a guilty plea*. Appellant argues that the trial court should have held a separate hearing, prior to accepting the guilty plea, to determine his competence to enter a plea as distinct from his competence to stand trial.

In *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1960), the Supreme Court held that a pretrial hearing conducted to determine the defendant's competence to stand trial was not sufficient to determine his competence to waive the assistance of counsel. The Court thus remanded the case to the Supreme Court of Arizona for the additional hearing. *Id.* at 151, 86 S.Ct. at 1320.

The United States Court of Appeals for the Ninth Circuit extended the *Westbrook* holding to the plea context in *Sieling v. Eyman*, 478 F.2d 211 (9th Cir.1973). The Ninth Circuit interpreted *Westbrook, supra,* to require a higher level of scrutiny in hearings on specific competency issues than in hearings on competence to stand trial. The standard the Ninth Circuit suggests is that the court assess competence to enter a plea "with specific reference to the gravity of the decisions with which the defendant is faced." *Id.* at 215; *see also United States v. Masthers*, 176 U.S.App.D.C. 242, 539 F.2d 721 (1976).

Somewhat earlier, and along the same lines, the federal district court in Connecti-cut approved the requirement of a special competency hearing. *Alfano v. United States,* 326 F.Supp. 792 (D.Conn.1971). It held, however, that no separate hearing on the issue of competence to enter a plea was required: (1) where the hearing prior to entry of the plea established competence based on psychiatric evaluation; and (2) where no new factual issues pertaining to mental competence were raised in the motion to withdraw. *Id.*

This court, in *Frendak v. United States,* 408 A.2d 364 (D.C.1979), was faced with the question whether the trial court should have held a separate hearing, distinct from the one held to determine competence to stand trial, to determine the defendant's competence to refuse to raise the insanity defense. The court found, citing *Seiling, supra,* that the standard used to determine competence to stand trial was "not intended to measure whether the defendant is also capable of making intelligent decisions on important matters relating to the defense." *Id.* at 379. It ordered, therefore, a hearing on the question of competence to refuse to raise the insanity defense. *Id.* at 380. The court noted, however, that:

> Because the trial court has already conducted an extensive inquiry into the question of appellant's sanity, the court, on remand, may decide that it already has sufficient evidence to make a determination. If so, no further inquiry is necessary.

*Id.* at 381.

■ We hold that, in keeping with *Westbrook, Seiling* and *Frendak,* the trial court must conduct a specialized hearing to determine the competence of a defendant who seeks to plead guilty where the question of mental competence has previously been raised on the record.[1] A decision to plead guilty is plainly one of the "important matters relating to the defense" we referred to in *Frendak. Frendak, supra,* at 379.

■ In this case, we find that the court did not abuse its discretion in denying ap-

---

1. The trial court should make an explicit find-     ing on competence at this stage.

pellant's motion to withdraw his plea despite the failure to hold a specialized hearing. It was abundantly clear from the motion, the files, and the record that Willis was not entitled to a hearing. As was noted above, all examinations made of Willis indicated that he suffered only from personality disorders and not from any type of psychosis; he exaggerated his symptoms and was described as a malingerer. Thus, on the face of the record there was no question as to appellant's competence.

Moreover, the special circumstances referred to in *Alfano, supra,* are present here as well. The competency hearing conducted *prior* to entry of the plea elicited a psychiatric opinion in complete conformity with the four other examinations conducted between entry of the plea and sentencing: Willis was a malingerer. Furthermore, as in *Alfano,* Willis raised no new factual issues, making only bald, unsubstantiated assertions of mental incompetence.

## II

In his final argument Willis asserts that the trial court failed to ascertain whether his plea was competent and voluntary, thereby violating Rule 11. Superior Court Criminal Rule 11 requires the trial

court to make a particular type of inquiry before accepting a defendant's guilty plea.[2]

The transcript of the plea proceeding held on May 11, 1979 establishes beyond peradventure that the court inquired thoroughly into appellant's understanding of his decision to plead. The court asked Willis: (1) if he understood the charges made against him; (2) whether he could describe the penalties for each charge upon conviction; (3) whether he understood that he waived his right to trial; (4) whether he had been threatened or coerced into pleading guilty by the government. The court, then, was extremely careful to inquire fully. Moreover, Chief Judge Moultrie did not make his inquiry in rote fashion or conclusory terms. His examination of Willis was designed to encourage appellant to speak up and to ask questions. Appellant's claim that the trial court failed to follow Rule 11 is meritless.

*Affirmed.*

---

2. The Rule states, in relevant part:

(c) Advice to defendant. Before accepting a plea of guilty or nolo contendere, the Court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by the law, if any, and the maximum possible penalty provided by law; and

(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) That if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

(d) Insuring that the plea is voluntary. The Court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The Court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecutor and the defendant or his attorney.