**Kevin C. WILLIAMS, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 86–614, 86–615, 89–456, 89–490, 90–1528 and 90–1547.

District of Columbia Court of Appeals.

Argued June 20, 1991.

Decided Aug. 30, 1991.

Judith L. Gorfkle, for appellant.

Barbara J. Valliere, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Elizabeth Trosman, Asst. U.S. Atty., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and PRYOR, Senior Judge.

FERREN, Associate Judge:

On January 12, 1984, appellant pled guilty to armed rape and armed kidnapping involving two separate crimes. The trial court sentenced him to two concurrent prison terms of fifteen years to life. Sixteen months later appellant filed a motion to withdraw his plea, claiming his rape plea was tainted because: (1) he lacked the mental capacity to understand the plea and related proceedings; (2) his counsel rendered ineffective assistance; and (3) his lawyer promised appellant a Youth Act sentence. Finding these claims unavailing, we affirm.

I.

Appellant pled guilty to armed rape in an incident where he and co-defendant William D. Davidson "bump[ed] and rape[d]" the complaining witness. After bumping complainant's car from behind, appellant and Davidson allegedly abducted her at gunpoint and took turns raping her. She escaped and identified appellant both in a photo array and in a line-up. Appellant filed a motion to reduce his sentence on September 7, 1984, which the trial court

denied on January 28, 1985. Appellant then filed a motion to withdraw the guilty plea on September 16, 1985, which the trial court, after a hearing, denied on February 26, 1986. Appellant then filed a motion to reopen, reconsider, and vacate his plea on March 10, 1988, which the trial court, after a hearing, denied on March 13, 1989. This appeal followed.[1]

## II.

Appellant argues that he was mentally retarded and could not understand his plea, and that the trial court therefore plainly erred by not holding, *sua sponte*, a special competency hearing for accepting the plea.

■ This jurisdiction, unlike many, applies a more stringent standard for determining competency to enter a plea than for competency to stand trial. *See Willis v. United States*, 468 A.2d 1320, 1323 (D.C.1983); *Frendak v. United States*, 408 A.2d 364, 380 (D.C.1979). However, in *Hunter v. United States*, 548 A.2d 806, 810 (D.C.1988), our most recent case on this subject, we noted:

> A separate hearing is not required if there is a pre-plea determination of competence based on a psychiatric evaluation and no new factual issues pertaining to competence are raised in the motion to withdraw the plea.

*Id.*, 548 A.2d at 810 n. 10; *see Willis*, 468 A.2d at 1323 (specialized hearing on defendant's plea competence required when "question of mental competence has previously been raised on the record").

At the pretrial suppression hearing, appellant argued that he was not competent to waive his *Miranda* rights, and at that time a clinical psychologist testified that appellant's IQ was 73 or borderline mentally retarded. The psychologist, however, testified that appellant nonetheless had no trouble understanding him or following the testing instructions. The trial court denied the motion to suppress, noting that appellant "knew what he was doing." Then, during the preparation stages of appellant's defense, a staff psychiatrist found appellant was "competent to stand trial by virtue of having a factual and rational understanding of the charge against him and [was] capable of properly assisting counsel with the preparation of his defense." Appellant's competency was not raised at his plea hearing, and there is nothing in the record of the plea hearing to indicate that appellant did not understand or comprehend the trial court's questions.

■ At the hearing on the motion to withdraw the plea, the trial court ruled that appellant had been competent to understand the plea proceedings twenty-one months earlier:

> But, on the question of whether he understood [his plea], there is not one scintilla of evidence before this Court by way of medical evidence that he did not understand the plea and that he was not able, in fact, to enter an intelligent plea. In fact, the medical testimony is to the contrary, because he was found competent to stand trial and competent to consult with his lawyer.... So, we must say, in all candor, that this defendant knew and was able to understand exactly what his options were. In fact, this defendant has impressed the Court as being a street-wise person.... he knew exactly what he was doing, made an intelligent choice and pled guilty.

No new evidence or factual issues bearing on appellant's competency were presented at the plea hearing.[2] *Compare Hunter*, 548 A.2d at 807 (trial court ignored record evidence questioning competence: difficulties in communicating with defendant and changing versions of crime) *with Willis*, 468 A.2d at 1324 (trial court did not abuse discretion in not holding plea competence hearing because appellant "raised no new

---

1. Appellant appeals the denial of all motions. There was a question whether the appeal of the motion to reopen, reconsider, and vacate was timely, but, after a remand by this court, the trial court ruled that appeal timely—a fact the government no longer disputes.

2. At this post-plea hearing, appellant introduced a psychological report from a Virginia juvenile case indicating that appellant was borderline mentally retarded. This added nothing to what already was known.

factual issues, making only bold, unsubstantiated assertions of mental incompetence"); *see United States v. Masthers,* 176 U.S.App.D.C. 242, 244, 539 F.2d 721, 723 (1976) (record evidence of defendant's incompetence should have alerted trial court to hold a plea competence hearing). In *Willis,* this court refused to find error because all psychological examinations of the defendant indicated he suffered only from personality disorders and that he was a "malingerer." *Id.,* 468 A.2d at 1324. In the present case, in addition to a lack of record foundation for asserting appellant's incompetence to plead, every person on record opined that appellant was able to understand and evaluate his options: the trial court, Attorney Pleshaw, Pleshaw's investigator Samuel, and the psychologist who presented testimony on appellant's IQ at the suppression hearing. This evidence is in addition to the psychiatrist's finding that appellant was competent to stand trial. With this record, we cannot say the trial court erred in failing to inquire at a plea hearing, *sua sponte,* into appellant's competence to plead guilty. *See State v. Watson,* 198 Conn. 598, 606, 504 A.2d 497, 501 (1986) (insufficient record evidence to support *sua sponte* plea competence inquiry).

## III.

 To reverse for the second claimed error, we must find that the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea for ineffective assistance of counsel. *McClurkin v. United States,* 472 A.2d 1348, 1352 (D.C.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984); *Lorimer v. United States,* 425 A.2d 1306, 1308 (D.C.1981). Appellant's burden is substantial; post-sentence pleas are withdrawn only to correct "manifest injustice." Super.Ct.Crim.R. 32(e); *see McClurkin,* 472 A.2d at 1352; *Willis,* 468 A.2d at 1322.

Moreover, appellant must show that counsel's advice "fell short of the range of competence demanded of attorneys in criminal cases" and motivated his plea. *McClurkin,* 472 A.2d at 1360 (quoting *Gibson v. United States,* 388 A.2d 1214, 1215 n. 4 (D.C.1978); *see Hill v. Lockhart,* 474 U.S. 52, 58–60, 106 S.Ct. 366, 370–371, 88 L.Ed.2d 203 (1985).

 Appellant raises several ineffectiveness challenges that can be disposed of summarily. His counsel, Robert Pleshaw, took actions consistent with a competent, spirited defense. Pleshaw successfully moved to sever appellant's case from Davidson's. He also attempted to suppress both the complainant's identifications and appellant's statements to the police. To prevail on many of appellant's claims, such as counsel's alleged failure to pursue an alibi, we would have to credit appellant or his mother, rather than Pleshaw. But the trial court explicitly credited Pleshaw:

> In regard to the ineffective assistance, we simply do not believe the testimony of the defendant, [and] would credit the testimony of Mr. Pleshaw and we rather marvel at the plea bargain that he was able to work out for the defendant.... We did not and do not find the testimony of [defendant's] mother to be very persuasive in connection with the possible alibi and one must wonder why she failed, on so many occasions, to tell anyone about it.... The convenience of her answers on so many aspects of this case—I call it convenient forgetfulness.

Assessing the credibility of witnesses is uniquely a trial court's function, and we reverse only if we find those assessments plainly wrong or lacking evidentiary support. *See Taylor v. United States,* 565 A.2d 992, 994 (D.C.1989); *Nche v. United States,* 526 A.2d 23, 24 (D.C.1987). The trial court's ruling was neither plainly wrong nor lacking evidentiary support.[3]

---

3. Appellant argues that Pleshaw failed to investigate Charles Washington. Appellant did not provide Pleshaw with Washington's name, and Washington, in any event, would not have helped *appellant's* alibi defense. Counsel's investigatory obligations are contingent on information defendants provide. *See White v. United*

*States,* 484 A.2d 553, 558–59 (D.C.1984). Moreover, counsel need not investigate witnesses counsel does not believe to be helpful. *See Townsend v. United States,* 549 A.2d 724, 728 (D.C.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2457, 104 L.Ed.2d 1011 (1989); *Miller v. United*

### IV.

Appellant argues that he pled guilty only because Pleshaw promised he would receive a Youth Act sentence. Pleshaw testified that he told appellant he was more likely to receive YCA treatment if he pled guilty but that he did not promise what sort of sentence appellant would receive. In addition to the trial court's crediting Pleshaw, the record at the plea hearing belies appellant's claim. Pleshaw, at the plea hearing attended by appellant, stated: "I have indicated to [appellant] that I have no idea what kind of sentence you will impose, whether a Youth Act sentence or an adult sentence." The trial court told appellant: "Now, on these sentences, if you were sentenced as an adult and received a sentence, you would go to the penitentiary. You wouldn't go to the youth center." Moreover, appellant recalled that at the hearing challenging the plea, the trial court did tell him he might receive an adult sentence. Appellant's ar-

gument is accordingly unsupported on this record.

*Affirmed.*

---

*States,* 479 A.2d 862, 870 (D.C.1984); *Harris v. United States,* 441 A.2d 268, 273–74 (D.C.1982)

Appellant suggests that Pleshaw should not have volunteered appellant for a line-up after the complainant identified appellant from photographs. Pleshaw testified that he and appellant weighed the risk of a line-up. He further testified that because appellant vehemently asserted his innocence, appellant agreed to a line-up as a mechanism—albeit a risky one—to clear himself.

Appellant maintains that Pleshaw failed to interview an alibi witness, appellant's brother, who allegedly was sleeping in the same room with appellant when the crime occurred. Neither appellant nor his mother (the main alibi witness) told Pleshaw or Pleshaw's investigator about the brother's possible testimony before appellant pleaded guilty, and during a post-trial hearing the mother did not satisfy the trial court as to why she had not come forward with this information earlier.

Appellant believes that Pleshaw failed to investigate possible defenses. Pleshaw testified that he had hired two investigators; that they had interviewed two alibi witnesses and had attempted to find two others; and that Pleshaw also had relied on co-defendant's investigatory resources. As indicated above, appellant's principal alibi witness, his mother, was not credible. Pleshaw did investigate appellant's version of how he happened to have the victim's wedding ring, and he reasonably concluded that appellant had bought the ring from co-defendant Davidson, a fact that counsel reasonably concluded would not help appellant.

Appellant also claims that Pleshaw erred in advising him that he was under investigation for an unrelated murder connected with another "bump and rape" with Davidson. Davidson implicated appellant as the trigger man in this murder in Davidson's statement to the police, but Davidson recanted this testimony at his own plea hearing seven days after appellant had pled to the rape in the instant case. Pleshaw could reasonably have relied on Davidson's statement to advise appellant.

Finally, appellant argues that counsel was ineffective because he failed to discover that Davidson would have exonerated him for the rape. In an undated declaration written by counsel and submitted with appellant's motion to reopen, reconsider or vacate his plea, Davidson stated that "Kevin Williams had nothing to do with the rape, and has never committed any crime...." The government points out that Davidson and appellant had spent several years together at Lorton "in which they were together twice a day for outside recreation, for meals; they were in the same compounds." The government stressed, and we agree, that these facts cast considerable suspicion on Davidson's recantation, particularly when Davidson did not come forth at the time of appellant's plea or in connection with appellant's initial motion to withdraw his plea. Moreover, there is no evidence that Davidson would have exonerated appellant at any time relevant to Pleshaw's conduct.