**Michael R. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CO–1405.**

District of Columbia Court of Appeals.

Argued Nov. 17, 1992.

Decided Nov. 24, 1993.

---

John M. Copacino, with whom Kathleen Hardy, was on the brief, for appellant.

Eric L. Yaffe, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, and Carolyn K. Kolben, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and SULLIVAN, Associate Judges.

TERRY, Associate Judge:

Appellant brings this appeal from a trial court order denying his motion under D.C.Code § 23–110 to withdraw his guilty plea. He contends that the trial court erred in failing to hold a hearing to determine whether he was mentally competent to enter the plea and that the court's subsequent refusal to allow him to withdraw the plea constituted an abuse of discretion. We affirm.

## I

Appellant Johnson was charged in a six-count indictment with armed kidnapping,[1] armed rape,[2] armed assault with intent to commit sodomy,[3] sodomy,[4] assault with a dangerous weapon,[5] and threatening to injure another person.[6] Following a mental examination by Dr. Lawrence Oliver, a psychologist with the Forensic Services Administration, the trial court found Johnson competent to stand trial.[7] A trial began on October 2, 1990, with the empaneling of a jury, but the proceedings were halted the next day when, pursuant to a plea bargain, Johnson pleaded guilty to one count of the indictment, the one in which he was charged with armed rape. As part of the plea bargain, the government agreed to dismiss all the remaining counts, as well as the indictment in another case in which Johnson was charged with first-degree burglary and armed rape. On November 27, 1990, the court sentenced Johnson to a prison term of fifteen years to life.

On July 24, 1991, Johnson filed a motion to vacate his sentence and withdraw his guilty plea,[8] which the trial court denied without a hearing. From that denial Johnson brings this appeal.

## II

At Johnson's plea hearing, the government proffered that it would prove the following facts if the case went to trial:

Shortly before 11:00 p.m. on May 23, 1990, Johnson and the victim struck up a conversation at a bus stop. The victim, believing she had missed her last bus, eventually accepted Johnson's offer of a ride home. Even though she had just met him, she agreed to walk with him to his home nearby so that he could get his car. They entered the house through the basement, but once they were inside, the victim became concerned for her safety because of Johnson's behavior. When she tried to leave, Johnson picked up a smooth cord and wrapped it tightly around her neck, causing her to gag and choke. He then forced her to disrobe and to have sexual intercourse with him against her will. After the sexual act, Johnson took the victim into the bathroom and told her to clean herself with a washcloth. Finally, at about 2:45 a.m., the victim managed to leave Johnson's house, flagged down a passing police car, and reported what had happened to one of the officers in the car. The officer was prepared to testify that the victim said she had been "raped and strangled," was upset and hysterical, and had what appeared to be rope burns on her neck. The victim returned with the officer to Johnson's house and positively identified Johnson as her assailant. The police recovered the washcloth and the cord, as well as the sheets from the bed where the rape took place. Other corroborative testimony was available from a serologist, a hair and fiber expert, and a physician who examined the victim shortly after the rape.

When the court asked Johnson whether the government's description of the facts of the crime was "fair and accurate," Johnson responded, "Word for word, yeah, I would say it was." He specifically admitted that he had had sexual intercourse with the victim without her consent and that he had put the cord around her neck in order to subdue her.

---

1. D.C.Code §§ 22–2101 and 22–3202 (1989).

2. D.C.Code §§ 22–2801 and 22–3202 (1989).

3. D.C.Code §§ 22–503 and 22–3202 (1989).

4. D.C.Code § 22–3502 (1989).

5. D.C.Code § 22–502 (1989).

6. D.C.Code § 22–2307 (1989).

7. Johnson was also examined by a psychiatrist, Dr. Cleto Di Giovanni, Jr., before the trial court made its determination of mental competency.

Dr. Di Giovanni opined that although Johnson suffered from post-traumatic stress disorder, alcohol and cocaine abuse (by history), and personality disorders, viz., "antisocial and borderline personalities," he did not have a major affective disorder such as "major depression."

8. The trial judge had received a letter from Johnson on January 29, 1991, in which he asserted that he was innocent, that he wanted a fair trial, and that his lawyer had told him the government would not seek the maximum sentence. In response to this letter, the judge appointed counsel for Johnson. It was that attorney who later filed the motion to vacate the sentence and withdraw the plea.

The court then accepted Johnson's guilty plea to the charge of armed rape.

## III

Johnson contends that at the time he entered his plea, issues regarding his mental competency were raised on the record, and that the trial court therefore committed error in failing to hold a hearing on his competency to waive his rights. He also argues that the court erred in failing to ˏhold a hearing on the motion to withdraw his plea because "new factual issues about his competency" had been raised in the motion. We reject both arguments.[9]

■ Johnson moved to withdraw his guilty plea pursuant to D.C.Code § 23–110 (1989). Actually, section 23–110 authorizes a convicted defendant to file a motion to vacate his sentence; withdrawal of a guilty plea is governed by Rule 32(e) of the Superior Court Criminal Rules.[10] Although in some cases this distinction is significant, in the case at bar it is not because the trial court treated the motion as if made under Rule 32(e). Moreover, the standard by which this court reviews the trial court's action under either provision is the same, namely, whether the trial court abused its discretion in denying the motion. See *McClurkin v. United States,* 472 A.2d 1348, 1352 (D.C.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984); *Lorimer v. United States,* 425 A.2d 1306, 1308 (D.C.1981).

The government argues at the outset that the motion should be deemed "procedurally barred" under this court's decision in *Shepard v. United States,* 533 A.2d 1278 (D.C. 1987). This argument, although creative, is based on a misreading of the *Shepard* opinion. In that case we held:

[I]f an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim. *Id.* at 1280. The *Shepard* court did not, as the government asserts, affirmatively require a defendant to note a direct appeal, file a § 23–110 motion, and then seek to stay the appeal pending a decision on the motion. Rather, the court held that if, during the pendency of a direct appeal, the appellant learns or knows (or reasonably should know) of grounds for a § 23–110 motion based on a claim of ineffective assistance of counsel, then he or she must file such a motion in the trial court and move to stay the appeal. A failure to follow that procedure will bar the appellant from bringing the collateral attack at a later time. *Id.; see Ellerbe v. United States,* 545 A.2d 1197, 1198 (D.C.) (appellant barred from raising on collateral attack matters which could have been raised on direct appeal), *cert. denied,* 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988). Since Johnson never noted a direct appeal from his conviction, there is no *Shepard* bar in this case. We therefore turn to the merits of Johnson's arguments.

■ We note, first of all, that Johnson did not seek to withdraw his plea until almost eight months after he was sentenced. A trial court should permit the post-sentence withdrawal of a guilty plea under Rule 32(e) only if such withdrawal is necessary to correct manifest injustice. *McClurkin, supra,* 472 A.2d at 1352; *Carmichael v. United States,* 479 A.2d 325, 327 (D.C.1984); *Willis v. United States,* 468 A.2d 1320, 1322 (D.C.1983); *see Williams v. United States,* 595 A.2d 1003, 1006 (D.C.1991) ("appellant's burden [of showing manifest injustice] is substantial"). This court has held that post-sentence motions attacking the voluntariness of guilty pleas under section 23–110 are tested under the "manifest injustice" standard of Rule 32(e). *McClurkin, supra,* 472 A.2d at 1352.

9. In his motion Johnson also claimed that his counsel at the plea and sentencing had rendered ineffective assistance, but he does not renew that claim on appeal.

10. Super.Ct.Crim.R. 32(e) provides:

*Withdrawal of plea of guilty.* A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea.

Although that standard applies under both Rule 32(e) and section 23–110, the fact that this collateral attack arises under the statute rather than the rule means that the disposition of this case is additionally subject to the hearing requirement of the statute. *See id.; Gibson v. United States,* 388 A.2d 1214, 1215 (D.C.1978). That is, the trial court may deny relief without a hearing only if "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." D.C.Code § 23–110(c); *see Pettaway v. United States,* 390 A.2d 981, 983–984 (D.C.1978); *Gibson, supra,* 388 A.2d at 1215; *Bettis v. United States,* 325 A.2d 190, 196–198 (D.C.1974).

■ The instant case, in our view, is one in which summary disposition is entirely appropriate. Johnson's contention that the trial court erred in failing to hold a "specialized hearing" prior to the acceptance of his plea is without support in the case law. Such a hearing "is not required if there is a pre-plea determination of competence based on a psychiatric evaluation and no new factual issues pertaining to competence are raised in the motion to withdraw the plea." *Hunter v. United States,* 548 A.2d 806, 810 n. 10 (D.C. 1988) (citations omitted). In this case Johnson was evaluated by Dr. Oliver and, at the request of the Public Defender Service, by Dr. Di Giovanni as well. Both evaluations were made available to the trial court before the plea was entered. Additionally, the trial court engaged in an extensive colloquy with Johnson at the plea hearing which plainly showed that Johnson was not afflicted with any obvious mental disorder which would make him incompetent to waive his rights and plead guilty.

Particularly relevant here is our decision in *Carmichael v. United States, supra.* In *Carmichael* the trial judge, before accepting the defendant's guilty plea, questioned him "extensively" and also had before him a report of a psychiatric evaluation. In addition, at a hearing four months earlier the judge had found the defendant competent to stand trial, relying at that time on a psychiatric report (apparently the same one). The defendant did not contest that finding, nor did he allege

in his motion to withdraw the plea "any new facts pertaining to competency." 479 A.2d at 327. We held that a separate hearing on competency to enter the plea was therefore not required. *Id.* (citing *Willis, supra,* 468 A.2d at 1323); *see also Eldridge v. United States,* 618 A.2d 690, 693 n. 3 (D.C.1992) (no abuse of discretion when trial court had benefit of doctor's written report).

■ The *Hunter* case, on which Johnson relies, is distinguishable for at least two reasons. First, in *Hunter* this court was reviewing the trial court's denial of a motion to withdraw a guilty plea filed *before* sentencing. Like virtually all other courts, this court has consistently held that a pre-sentence motion to withdraw a guilty plea should be granted "if for any reason the granting of [the motion] seems fair and just." *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); *see, e.g., Gooding v. United States,* 529 A.2d 301, 306 (D.C.1987). This test is far more lenient than the "manifest injustice" standard which applies to post-sentence motions to withdraw guilty pleas. *See Hunter, supra,* 548 A.2d at 810. Second, in *Hunter,* unlike this case, the judge considering the motion "did not know what the psychological evaluation said because [the judge] had not received a copy." *Id.* at 808. In this case, by contrast, the court's determination of mental competency was not "based solely on the court's observations of the defendant," as Johnson asserts in his brief, but on comprehensive evaluations by a psychologist and a psychiatrist. On this record we are satisfied that the trial court did not err in failing to order a specialized hearing *sua sponte* [11] to determine Johnson's competency before accepting his plea. *See, e.g., Williams, supra,* 595 A.2d at 1005–1006 (given psychologist's and psychiatrist's determinations of competency, as well as "a lack of record foundation for asserting . . . incompetence to plead," trial court did not err in failing to inquire *sua sponte* at plea hearing into defendant's competency to plead guilty).

We recognize that Johnson would be entitled to a hearing even now if "new factual issues pertaining to mental competence were

---

11. There was no request by defense counsel for such a hearing.

raised in the motion to withdraw." *Willis, supra,* 468 A.2d at 1323. The record before us, however, is devoid of any new information that would warrant a hearing. As the trial judge stated in his order, Johnson "has raised no new factual issues bearing on his competency other than a vague and general assertion of incompetence." At the time of the plea, the judge was already aware of Johnson's mental problems because they were set forth in the reports of the two examinations; Dr. Di Giovanni's four-page, single-spaced report, in particular, was quite detailed. The only allegation of a possible mental problem in the § 23–110 motion is the following:

> Medical records from the D.C. Jail indicate that on September 26, 1990, one week before Mr. Johnson entered a guilty plea in this case, he experienced a psychiatric episode consistent with depression. Mr. Johnson has a history of mental illness, and suicide attempts.

The judge quite properly treated this statement as too "vague and general" to require a hearing.

Johnson now asserts in his brief that, "[h]ad the court held a hearing on competency on October 3, 1990, the court would have learned about an episode in the psychiatric unit at the D.C. Jail on September 26, 1990, during which Mr. Johnson set his cell on fire and threatened to hang himself." But that incident was not even mentioned in the motion or its supporting memorandum.[12] More significantly, at the plea hearing the judge was made aware of Johnson's history of suicidal thoughts and his outpatient treatment for depression.[13] Nevertheless, after an extended colloquy with Johnson himself, the judge was satisfied that Johnson was competent to enter a guilty plea. In his order denying the § 23–110 motion, the judge concluded that Johnson's "contention that a 'psychiatric episode' rendered him incapable is belied by defendant's own admissions in this court that he understood the nature of the proceedings and of his guilty plea." On the record before us, we cannot say that this conclusion was erroneous. *See Williams, supra,* 595 A.2d at 1005 & n. 2 (psychological report introduced at post-plea hearing had no bearing on defendant's competency because it "added nothing to what already was known" at the time of the plea). Thus we find no abuse of discretion in the denial of Johnson's motion without a hearing.

## IV

In light of what the trial court already knew at the time of Johnson's plea and sentencing about his mental condition, we hold that the court did not err in refusing to allow him to withdraw his guilty plea eight months after sentencing and that there was no manifest injustice in that refusal. We further hold that the motion to withdraw the plea under D.C.Code § 23–110 did not raise any new factual issues requiring a hearing, and that the court therefore committed no error in denying the motion without a hearing. The order denying that motion is accordingly

*Affirmed.*

---

12. There is no way to construe the vague reference to "a psychiatric episode consistent with depression" as an allegation that Johnson had attempted suicide by setting his cell on fire and threatening to hang himself. The mere mention of such an "episode," without more detailed information about the nature of that episode, added nothing significant to what the judge already knew from the reports of the two doctors.

13. After oral argument, the parties brought to our attention an evaluation and treatment recommendation prepared by Daniel A. Feerst, a staff therapist with the Fogel Foundation Human Sexuality Institute, which was before the trial court at the time of sentencing. We granted leave to both parties to file supplemental briefs addressing the significance of this document. Having reviewed those briefs and the document itself, which was made part of the record, we are satisfied that the information it contains was already present in the reports of Drs. Oliver and Di Giovanni.